**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harold C. COLLINS, Defendant-**
**Appellant.**

**No. 71–1781.**

United States Court of Appeals,
Sixth Circuit.

March 24, 1972.

---

William R. Bagby, Lexington, Ky., on brief for defendant-appellant.

James F. Cook, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before WIECK, McCREE and MILLER, Circuit Judges.

PER CURIAM.

A jury convicted the appellant, Harold C. Collins, of violating 26 U.S.C. § 7203. That section provides that the wilful failure to file a timely income tax return shall constitute a misdemeanor.[1] A five-count information charged that appellant Collins violated § 7203 in each of the years 1963–67. The sole dispute at trial was whether the appellant's failure to file the returns was wilful.

At trial, the theory of the defense was that Collins failed to file a timely return because of his negligence, ignorance, and lack of appreciation of the importance of making a return. The appellant contends on appeal that his conviction must be reversed because the district court's instructions to the jury deprived him of his defense.

The evidence indicates that Harold Collins, age 54, is employed on a Kentucky thoroughbred race horse farm where he lives in a tenant house. His principal duty is to oversee the care and development of the horses. Two of Collins' sons are also employed on the farm. Collins' father was a tenant farmer and because appellant was often needed to help his father, he only sporadically attended school through the sixth grade. Consequently, appellant can neither read nor write well and has considerable difficulty with simple arithmetic.

After his discharge from the army following World War II, Collins worked for approximately thirteen years as a farm laborer on several horse farms, earning from $150–200 per month. During this period, he and his wife had six children. Beginning in about 1960, Collins' income increased, his children began leaving home, and be began to incur an actual income tax liability.

In 1963, an Internal Revenue agent, Eugene Kunkle, came to visit Collins to determine whether he had filed a 1960 return. The appellant indicated that he had not filed for that year and then informed the agent that he had not filed a return for 1961 or 1962. The revenue officer then helped Collins prepare the returns. With assistance from his employer, Collins obtained a loan and paid his tax bill. In subsequent years, appellant did not file a return.

Integral to the defense was Collins' contention that he did not think that he

---

[1] Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

had to file. He claimed that he expected that another revenue agent would come to see him and collect any taxes due. The defendant testified as follows:

Q. Did you expect some day, some tax collector to come out and say, "Well, you have so much money?"

A. Yes, I guess. Well, I'm sure that that is what I thought. I would pay it like some other bill, come by like the other man did, and I would arrange to try to catch it up some way or another and get it paid off that day.

Q. Were you worried about filing late?

A. No, sir. No, sir, I didn't know—

Such a defense was legally permissible. And this explanation could have been accepted by the jury as negating any element of wilfulness on the part of Collins. Such a mistake or ignorant belief would deny the existence of a wilful failure to file. The court in United States v. Matosky, 421 F.2d 410, 413 (7 Cir. 1970), said:

> Rather, the Government has proven its case when it has established beyond a reasonable doubt: that the defendant was required to file a return; that he knew that he was so required; and that he willfully or purposefully, as distinguished from inadvertently, negligently, or mistakenly, failed to file such a return.

Thus the defendant here was entitled to have the jury consider the validity of his contention that he thought that another revenue agent would come around to collect any taxes owed.

The district court apparently thought that such a defense was improper. In its instruction to the jury, the court stated:

> Now, you can recognize, I'm sure, how practical it is for the law to require everybody to make an income tax re-turn and how impractical it would be to say to some, "You don't have to make it, we will take care of it some other way. Everybody has to do it but you don't have to do it." Now, it has been argued here in this case that the Government should have gone to see him again, should have told him. I'm sure you recognize how absolutely impossible that would be if that was a defense and everybody who was required, two hundred million population, had to have an agent of the Government call on him if he did not make his return and remind him that he had to make it. That would be a practical impossibility. So this defendant has to be treated like everybody else. If he was due to make an income tax return, he should have made it. The law does not excuse him except under certain well-defined reasons which I'm going to give you.

Along with a "general objection," defense counsel specifically objected to the above portion of the instructions as required by Rule 30, Federal Rules of Criminal Procedure.

The district court correctly noted the administrative difficulty inherent in requiring a revenue agent to contact each individual taxpayer. But, of course, in assessing the wilfulness of Harold Collins, the jury should not have been concerned with administrative feasibility nor guided by what everyone else knows. We conclude that the charge to the jury had the effect of depriving the defendant of his basic defense.

The United States urges that the charge when considered in its entirety was not so prejudicial as to require reversal. We are persuaded that the opposite is true in this case.

The judgment of conviction must therefore be reversed and the case remanded to the district court for a new trial.